## UNITED STATES BANKRUPTCY COURT
### FOR THE
### DISTRICT OF MASSACHUSETTS

~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

In re
**FRANK G. DEASSIS and**
**IVALDETE F. DEASSIS,**                          Chapter 13
    Debtors                          Case No. 10-17427-JNF


~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

**FRANK G. DEASSIS and**
**IVALDETE F. DEASSIS**,
    Plaintiffs
v.                                          Adv. P. No. 10-1254
**WELLS FARGO BANK, N.A., and**
**FEDERAL NATIONAL MORTGAGE**
**ASSOCIATION,**
    Defendants


~~~~~~~~~~~~~~~~~~~~~~~~~~~~~~

### MEMORANDUM

Whereas, Frank G. Deassis and Ivaldete F. Deassis, (the "Debtors" or the "Plaintiffs"), filed a voluntary Chapter 7 petition on March 10, 2010 (the "First Bankruptcy Case"); and

Whereas, the Debtors' First Bankruptcy Case was closed on July 7, 2010 following the filing of a Report of No Distribution by the Chapter 7 Trustee and without the entry of a discharge in favor of the Debtors; and

Whereas, in their First Bankruptcy Case, the Debtors did not list any claims against the Defendants, Wells Fargo Bank, N.A. ("Wells Fargo") or Federal National Mortgage

1

Association ("FNMA") on Schedule B-Personal Property, and they did not disclose the

pendency of a civil action they commenced against Wells Fargo in the Middlesex Superior

Court, Department of the Trial Court; and

Whereas, on July 7, 2010, the same day their First Bankruptcy Case was closed, the

Debtors filed a second Chapter 7 petition (the "Second Bankruptcy Case"); and

Whereas, prior to the commencement of either bankruptcy case, on February 1, 2010,

the Defendant, Wells Fargo, conducted a foreclosure sale with respect to the Debtors'

residence located at 102 Woodruff Ave., Medford, Massachusetts (the "Property"), and

subsequently assigned its bid to the Defendant, FNMA; and

Whereas, prior to the commencement of either bankruptcy case and the foreclosure

sale of their Property, the Debtors had filed an action against Wells Fargo in the Middlesex

Superior Court, Department of the Trial Court; and

Whereas, on July 30, 2010, in the Second Bankruptcy Case, FNMA filed a Motion for

Relief from Stay, with exhibits, in which it asserted that 1) it had purchased the Property

for $479,501.89 pursuant to a foreclosure deed and an assignment of bid as a result of the

foreclosure sale conducted by Wells Fargo on February 1, 2010; 2) that the Debtors were

obligors under a note and mortgage which had been given to Wells Fargo Bank on June 27,

2007; and 3) relief from the automatic stay was warranted to permit it to exercise its rights

to the Property, including gaining rightful possession of the Property; and

Whereas, the Debtors converted their Second Bankruptcy Case to a case under

Chapter 13 on August 16, 2010; and

2

Whereas, on September 16, 2010, the Debtors filed a "Verified Complaint" and an "Amended Verified Complaint," against the Defendants, neither of which, in fact, are verified; and

Whereas, through their Amended Complaint, the Debtors sought the following relief:

(i) Reversal of the foreclosure of their home and unclouded title [to] the property.

(ii) Voidance of the property transfer to the Federal National Mortgage Association.

(iii) Rescission of the July 27, 2007 loan transaction.

(iv) Damages and attorney's fees and costs in an amount to be determined at trial.

(v) A protective order against any foreclosure attempts and actions of the Defendants, their agents, and their assigns.

(vi) Any and all other relief deemed just and right; and

Whereas, in their Amended Complaint, the Debtors formulated the following counts: Count I-Breach of the duty of good faith and reasonable diligence; Count II-Breach of Contract; Count III-Deceit; Count IV-Unjust Enrichment; Count V-Violation of 940 CMR 8.06(1); Count VI-Violation of M.G.L. c. 183 § 28C; Count VII-Violation of M.G.L. c. 183C and 940 CMR 8.06(15); Count VII [sic]-Violation of the Equal Credit Opportunity Act; Count VIII [sic]-Violation of M.G.L. c. 93A; and

Whereas, in their Amended Complaint, the Plaintiffs alleged the following facts: 1) that they purchased the Property on August 30, 2002 for their family as a residence for $343,000 and financed the acquisition with a mortgage loan; 2) that, on July 27, 2007, they refinanced the purchase money mortgage and executed a mortgage, together with a note

in favor of Wells Fargo in the amount of $405,000 with interest payable at an adjustable rate, with an initial rate of 7.75 percent, and with interest only payments for 10 years; 3) that they provided Wells Fargo with financial documentation indicating that Ivaldete Deassis had monthly income of $9,250 which income conflicted with the income reported on the Debtors' unfiled tax return for 2006 in the sum of $2,500 per month; 4) that Ivaldete Deassis has some ability to speak and understand English, but limited ability to read English; 5) that Wells Fargo added Frank Deassis as an additional signatory to the note and mortgage; 6) that Wells Fargo knew or should have known that the Debtors were unable to afford the loan which had initial monthly payments of $2,791.12 without regard to taxes and insurance; 7) that they defaulted in making their mortgage payments to Wells Fargo; 8) that they communicated with Wells Fargo and requested assistance and modification of their loan and provided information to Wells Fargo; 9) that they requested a loan modification and provided Wells Fargo with all the information requested; 10) that Wells Fargo made an offer for a payment plan, which was "completely beyond the reach of Plaintiff's [sic] financial resources" and was neither feasible nor made in good faith; 11) that Wells Fargo received funds from the United States Department of Treasury in connection with the Troubled Asset Relief Program ("TARP") and is required to consider foreclosure alternatives and to consider modification of mortgages with troubled borrowers pursuant to 12 U.S.C. § 1701x(c)(5); 12) that Wells Fargo participates in the Home Affordable Modification Program ("HAMP") and must consider a mortgage modification before proceeding with foreclosure; and 13) that they filed a complaint in the Massachusetts

4

Superior Court which was the subject of an Emergency Motion for Voluntary Dismissal filed by their prior attorney; and

Whereas, in this adversary proceeding, the Plaintiffs have filed a Motion for Preliminary Injunction, through which they seek an order enjoining FNMA from pursuing a summary process action to evict them from the Property; and

Whereas, a comparison of the Amended Complaint filed on December 9, 2009 in the Middlesex Superior Court and the Amended Verified Complaint filed in this adversary proceeding is pertinent to the resolution of the Motion for a Preliminary Injunction; and

Whereas, in the Middlesex Superior Court action, the Debtors formulated three counts: Count I - Violation of 940 CMR 8.06(1); Count II - Violation of G.L. c. 183C and 940 CMR 8.06(15); and Count III - Violation of G.L. c. 93A; and

Whereas, in their Superior Court Amended Complaint the Debtors alleged that Wells Fargo violated 940 CMR 8.06(1) by misinforming them that their loan would have affordable payments, by recklessly facilitating the foreclosure by misleading them about the terms and conditions of the loan, by inducing them to pay Wells Fargo monies through misrepresentations;[1] and

---

[1] 940 CMR 8.06(1) provides:

(1) It is an unfair or deceptive act or practice for a mortgage broker or lender to make any representation or statement of fact if the representation or statement is false or misleading or has the tendency or capacity to be misleading, or if the mortgage broker or lender does not have sufficient information upon which a reasonable belief in the truth of the representation or statement could be based. Such claims or representations include, but are not limited to the availability, terms,

Whereas, the Debtors also alleged that Wells Fargo violated Mass. Gen. Laws ch. 183C as well as 940 CMR 8.06(15) by making an excessively risky loan that was unfair and/or unconscionable to the Plaintiffs; by failing to account for Plaintiffs' ability to repay the first or second mortgage; and by making a home loan secured by the Plaintiffs' principal residence in circumstances where the Defendant could not reasonably believe that the Plaintiffs would be able to make the scheduled payments;[2] and

---

conditions, or charges, incident to the mortgage transaction and the possibility of refinancing. In addition, other such claims and representations by the broker may include the amount of the brokerage fee, the services which will be provided or performed for the brokerage fee, the borrower's right to cancel any agreement with the mortgage broker, the borrower's right to a refund of the brokerage fee, and the identity of the mortgage lender that will provide the mortgage loan or commitment.

[2] 940 CMR 8.06(15) provides:

(15) It is an unfair or deceptive act or practice for a mortgage broker to arrange or mortgage lender to make a mortgage loan unless the mortgage broker or lender, based on information known at the time the loan is made, reasonably believes at the time the loan is expected to be made that the borrower will be able to repay the loan based upon a consideration of the borrower's income, assets, obligations, employment status, credit history, and financial resources, not limited to the borrower's equity in the dwelling which secures repayment of the loan (subject, however, to the treatment of No Income Loan Products in 940 CMR 8.06(16)). The determination under 940 CMR 8.06(15) of a borrower's ability to repay a loan shall take into account, without limitation:

(a) the borrower's ability to repay at the fully indexed rate, assuming a fully amortizing repayment schedule, and the resulting scheduled payments that may be charged under the loan accounting for interest rates, financial terms or scheduled payments that may adjust upward; and

(b) the property taxes that are required on the subject property at the time the loan is expected to be made and the reasonably anticipated insurance costs if the loan requires that insurance be maintained on the property, regardless whether the broker or lender will collect an escrow for such taxes or insurance in connection with loan payments.

For purposes of 940 CMR 8.06(15)(a), the "fully indexed rate," with respect to loan rates that may adjust upward, shall mean the index rate prevailing at the date of loan origination plus the margin to be added to it after the expiration of an introductory interest rate. For purposes of illustration, assume that a loan with an initial fixed rate of 7% will reset to the six-month London Interbank Offered Rate (LIBOR) plus a margin of 6%. If the six-month LIBOR rate equals 5.5% at the date of origination, the determination of ability to pay under 940 CMR 8.06(15)(a) shall take into account the borrower's ability to repay at 11.5% (5.5% plus 6%), regardless of any interest rate caps that limit how quickly the fully indexed rate may be reached.

Mass. Gen. Laws ch. 183C, § 1 et seq. is known as the Predatory Home Loan Practices Act.  It is directed at abuses associated with "high-cost home mortgage loans," which are defined as:

[A] consumer credit transaction that is secured by the borrower's principal dwelling, other than a reverse mortgage transaction, a home mortgage loan that meets 1 of the following conditions:--

(i) the annual percentage rate at consummation will exceed by more than 8 percentage points for first-lien loans, or by more than 9 percentage points for subordinate-lien loans, the yield on United States Treasury securities having comparable periods of maturity to the loan maturity as of the fifteenth day of the month immediately preceding the month in which the application for the extension of credit is received by the lender; and when calculating the annual percentage rate for adjustable rate loans, the lender shall use the interest rate that would be effective once the introductory rate has expired.

(ii) Excluding either a conventional prepayment penalty or up to 2 bona fide discount points, the total points and fees exceed the greater of 5 per cent of the total loan amount or $400; the $400 figure shall be adjusted

7

Whereas, the Debtors asked the Superior Court to determine that the mortgage loan was an unfair and deceptive act and practice in violation of Mass. Gen. Laws ch. 93A, § 2; to determine that the mortgage loan was unenforceable; to reform the loan; to award monetary damages; and to restrain any foreclosure sale of the Property; and

Whereas, on October 22, 2009, prior to filing their Amended Complaint in the Superior Court,  the Debtors had filed a Motion for Temporary Restraining Order and/or

---

annually by the commissioner of banks on January 1 by the annual percentage change in the Consumer Price Index that was reported on the preceding June 1.

Mass. Gen. Laws ch. 183C, § 2. Section 18 of Chapter 183C provides in pertinent part:

(a) A violation of this chapter shall constitute a violation of chapter 93A.

(b) An aggrieved borrower or borrowers may bring a civil action for injunctive relief or damages in a court of competent jurisdiction for any violation of this chapter.

(c) In addition the court shall, as the court may consider appropriate: (1) issue an order or injunction rescinding a home mortgage loan contract which violates this chapter, or barring the lender from collecting under any home mortgage loan which violates this chapter; (2) issue an order or injunction barring any judicial or non judicial foreclosure or other lender action under the mortgage or deed of trust securing any home mortgage loan which violates this chapter; (3) issue an order or injunction reforming the terms of the home mortgage loan to conform to this chapter; (4) issue an order or injunction enjoining a lender from engaging in any prohibited conduct; or (5) impose such other relief, including injunctive relief, as the court may consider just and equitable. . . .

Mass. Gen. Laws ch. 183C, § 18.

Preliminary Injunction seeking to enjoin the pending foreclosure sale of the Property which the Superior Court denied on January 13, 2010, stating "Plaintiff [sic] has failed to establish the likelihood of success on the merits of his [sic] claims, and therefore, the motion is DENIED;" and

Whereas, after the denial of the Debtors' request for injunctive relief, Wells Fargo, on February 1, 2010, conducted a foreclosure sale of the Property and assigned all its right, title and interest in and to and under the Memorandum of Sale dated February 1, 2010; and

Whereas, the Superior Court did not act on the Plaintiffs' Emergency Motion for Voluntary Dismissal pursuant to Mass. R. Civ P. 41(a)(2) before the Debtors filed a Suggestion of Bankruptcy on March 11, 2010; and

Whereas, Wells Fargo, in its Motion to Dismiss Count I and Count II of the Debtors' state court complaint asserted that the alleged violations of 940 CMR 8.06 do not create a private right of action; that the Debtors failed to plead that their loan was a "high cost home mortgage loan"[3] covered by the provisions of 940 CMR 8.06; and that, even if pled, the loan was not a high cost home mortgage loan because it did not fit within the parameters of the statute; and

Whereas, on March 10, 2010, the Superior Court dismissed Count I and Count II of the Plaintiffs' Amended Complaint, adding: "The Court is concerned with the failure of the plaintiffs to explain how they signed a mortgage application under the pains and

---

[3] *See* note 2, *supra.*

penalties of perjury indicating income and ability to repay the mortgage loan, as this suggest [sic] fraud by either the plaintiffs or the uncharged mortgage buyer;" and

Whereas, this Court observes that the Debtors attached to their Memorandum in Support of Plaintiffs' Motion for a Preliminary Injunction, as Exhibit I, a Hardship Letter hand written by Ivaldete Deassis, which demonstrates a mastery of the English language;[4] in contrast to the allegation in their Complaint that she had an extremely limited ability to read the English language; and

Whereas, the Court further observes that the Amended Complaint filed in the Middlesex Superior Court is virtually identical to the Amended Complaint filed by the Debtors here, except that the Debtors have added allegations about the TARP and HAMP programs; and

Whereas, neither Plaintiffs nor Defendants requested an evidentiary hearing on the Motion for Relief from Stay or the Debtors' Motion for Preliminary Injunction; and

Whereas, the material facts necessary to decide the Motion for Relief from Stay and the Motion for Preliminary Injunction are undisputed and are set forth in the Amended

---

[4] In her letter, dated October 26, 2008, Ivaldete Deassis stated:

We have a small cleaning company that has always been our secure income base. In the past year with all of the economic problems a large number of our clients have either lowered their number of cleaning times a month or canceled it all together. We have been struggling to gain more clients and for this reason our payments have fallen behind. Our current monthly income is 4,200 [sic] and with all of our other bills and two still dependent kids, it has been a hardship to complete our mortgage payments.

Complaint and in the exhibits attached to the memoranda filed by the parties; and

Whereas, "[i]n determining whether preliminary injunctive relief is appropriate, the United States Court of Appeals for the First Circuit has directed trial courts to consider: 1) the likelihood of success on the merits; 2) the potential for irreparable harm if the injunction is denied; 3) the balance of relevant impositions, i.e., the hardship to the nonmovant if enjoined as contrasted with the hardship to the movant if no injunction issues; and 4) the effect, if any, of the court's ruling on the public interest;" *see* Ross-Simons of Warwick, Inc. v. Baccarat, Inc., 102 F.3d 12, 15 (1st Cir.1996) (citations omitted); and

Whereas, the burden of proof is on the moving party to establish all four requirements, *see* In re Aerovox, Inc., 281 B.R. 419, 433 (Bankr. D. Mass. 2002); and

Whereas, to obtain relief from the automatic stay under 11 U.S.C. § 362(d)(1), the Court must determine "whether a creditor has a colorable claim to property of the estate," *see* Grella v. Salem Five Cent Sav. Bank, 42 F.3d 26, 32 (1st Cir. 1994),

Now, therefore, the Court finds and rules as follows:

1) The Debtors' equity of redemption in the Property was foreclosed prior to the commencement of this case, Outpost Café, Inc. v. Fairhaven Savings Bank, 3 Mass. App. 1, 7 (Mass. App. Ct. 1975), and the Property is no longer property of the bankruptcy estate. *See* In re Hall, 188 B.R. 476, 481-82 (Bankr. D. Mass. 1995). The Debtors' equity of redemption was extinguished by the prepetition foreclosure sale, and the mortgage cannot be revived under Massachusetts law. In re Mellino, 333 B.R. 578, 666 (Bankr. D. Mass. 2005). The Debtors' only interest in the Property is that of tenants at sufferance. *See* In re

<u>Theoclis</u>, 213 B.R. 880, 882 (Bankr. D. Mass. 1997).

2)  The Plaintiffs do not have a likelihood of success on the merits of their Amended

Complaint filed in this Court.  The Middlesex Superior Court granted Wells Fargo's Motion

to Dismiss Counts I and II of the Debtors' Amended Verified Complaint, which contained

similar claims raised by the Debtors in Counts V and VII of this adversary proceeding.  The

Superior Court dismissed those two counts on the merits. The Debtors have not remedied

the omissions noted by Wells Fargo in their Superior Court Complaint in their Amended

Complaint with respect to the applicability of 940 CMR 8.06 as there are no allegations that

the mortgage obtained from Wells Fargo is within the parameters of 940 CMR 8.06.

Moreover, the doctrines of res judicata and collateral estoppel bar the Debtors from raising

the same claims and issues which were already adjudicated in their prior case.  *See*

<u>Blacksmith Investments, Inc. v. Woodford (In re Woodford)</u>, 418 B.R. 644 (B.A.P. 1st Cir.

2009).  Additionally, the Rooker-Feldman doctrine deprives this Court of jurisdiction to

consider the counts dismissed by the Superior Court. *See* <u>In re Sunshine Three Real Estate

Corp.</u>, 426 B.R. 6, 18 (Bankr. D. Mass. 2010) ("The Rooker-Feldman doctrine bars 'cases

brought by state-court losers complaining of injuries caused by state-court judgments

rendered before the district court proceedings commenced and inviting district court

review and rejection of those judgments.'" <u>Exxon Mobil Corp. v. Saudi Basic Indus. Corp.</u>,

544 U.S. 280, 284, 125 S.Ct. 1517, 161 L.Ed.2d 454 (2005).  It "'strip[s] federal subject matter

jurisdiction over lawsuits that are, in substance, appeals from state court decisions.'").

Accordingly, the Debtors have not shown any likelihood of success on the merits of Counts

V and VII.

3)  As to the other counts of the adversary complaint, the Debtors, at this juncture,

also have failed to establish any likelihood of success on the merits.  As to Counts I and II

concerning breach of the duty of good faith and reasonable diligence, and breach of

contract, the Debtors have failed to plead sufficient facts to permit this Court to conclude

that they would prevail on the merits of their claim. The Debtors allege that Wells Fargo

breached the duty of good faith and reasonable diligence because it failed to provide them

with "a new modification application package" and failed to postpone the foreclosure sale

pending consideration of the modification application.  They allege that Wells Fargo

breached a contract with the federal government as they were third party beneficiaries of

the HAMP program.  Despite the Debtors arguments, this Court is unable to determine

whether the parties ever reached an agreement as to a loan modification, let alone whether

that contract was breached.  In this regard, the Debtors' unverified Amended Complaint

cannot be used to support their bare bones assertions.  Additionally, the Debtors have not

alleged that the foreclosure sale was not properly advertised or that the bid price was

unreasonably low.  As in McKensi v. Bank of Amer., N.A., 2010 WL 3781841 (D. Mass. Sept.

22, 2010), the Debtors did not allege sufficient facts to establish that they are intended third

party beneficiaries of the HAMP agreements, and thus have failed to establish a likelihood

of success on the merits of such a claim.  Moreover, a majority of courts has determined

that HAMP does not provide a private right of action.  *See, e.g.,* Speleos v. BAC Home

Loans Servicing, L.P., 2010 WL 5174510 (D. Mass. Dec. 14, 2010); In re Fernandes, __ B.R.

___, 2011 WL 322017 (Bankr. D. Mass. Jan. 31, 2011).

With respect to Count III for Deceit, the Court observes that the allegations in that count are substantially similar to those set forth in Count V pertaining to violations of 940 CMR 8.06(1). Because the Debtors failed to plead deceit with particularity, *see* Fed. R. Bankr. P. 9, which makes Fed. R. Civ. P. 9(b) applicable to bankruptcy proceedings, the Court concludes that they have failed to establish a likelihood of success on the merits of that Count III.

With respect to Count IV -Unjust Enrichment, through which the Debtors seek the reversal of the foreclosure sale and damages, the Court notes that relief sought through it is derivative and remedial in nature. Until such time as the Plaintiffs can prevail on the merits of the other counts of their Amended Complaint, they have failed to establish a likelihood of success on the merits of Count IV. Moreover, the Debtors failed to set forth either the amount of payments made to Wells Fargo in excess of the monthly contractual amounts due, or the extent to which Wells Fargo has been unjustly enriched; and the Plaintiffs have not accounted for the fact that they have lived in the Property for over one year since the foreclosure sale and have made no payments to Wells Fargo.

Through Count VI, the Debtors maintain that Wells Fargo violated Mass. Gen. Laws ch. 183, § 28C, which provides:

> (a) A lender shall not knowingly make a home loan if the home loan pays off all or part of an existing home loan that was consummated within the prior 60 months or other debt of the borrower, unless the refinancing is in the borrower's interest. The "borrower's interest" standard shall be narrowly construed, and the burden is upon the lender to determine and to

14

demonstrate that the refinancing is in the borrower's interest.

Factors to be considered in determining if the refinancing is in the borrower's interest include but are not limited to:--

(1) the borrower's new monthly payment is lower than the total of all monthly obligations being financed, taking into account the costs and fees;

(2) there is a change in the amortization period of the new loan;

(3) the borrower receives cash in excess of the costs and fees of refinancing;

(4) the borrower's note rate of interest is reduced;

(5) there is a change from an adjustable to a fixed rate loan, taking into account costs and fees; or

(6) the refinancing is necessary to respond to a bona fide personal need or an order of a court of competent jurisdiction.

Id. The Debtors did not plead facts from which this Court can determine whether this statute was violated. The Debtors' allegations simply parrot the words of the statute. The Debtors failed to set forth the terms of the loan they obtained in August of 2002, and accordingly, this Court has no way of comparing and thus determining whether the refinancing was not in their interest.

Similarly, the Debtors failed to plead sufficient facts for this Court with respect to Count VIII pursuant to which they assert a violation of the Equal Credit Opportunity Act, which prohibits any creditor from discriminating "against any applicant, with respect to any aspect of a credit transaction--

(1) on the basis of race, color, religion, national origin, sex or marital status, or age (provided the applicant has the capacity to contract);

15

(2) because all or part of the applicant's income derives from any public
assistance program; or

(3) because the applicant has in good faith exercised any right under this
chapter.

15 U.S.C. § 1691.  Because the Debtors failed to allege sufficient facts pertinent to Count

VIII, the Court concludes that they have not shown a likelihood of success on the merits.

4) Because the Debtors have failed to establish the likelihood of success on the merits

of any of the Counts of their Amended Complaint, the Court need not address the other

elements pertinent to the issuance of a preliminary injunction.

5) The Debtors also failed to disclose their claims against Wells Fargo in the First

Bankruptcy Case.  The Court finds based upon the principle of judicial estoppel that the

Debtors are unlikely to succeed on the merits of their claims against Wells Fargo.

> In the First Circuit, judicial estoppel has been applied when a debtor fails to
> disclose a claim in bankruptcy proceeding[s] and later seeks to assert it. "In
> such a situation, the plan to '[c]onceal your claims; get rid of your creditors
> on the cheap, and start over with a bundle of rights' constitutes 'an
> unacceptable abuse of judicial proceedings.' " Nevertheless, estoppel is not
> the automatic result of a failure to schedule an asset as courts have been
> reluctant to apply the equitable doctrine where the debtor's failure arose
> from inadvertence, such as a lack of knowledge of the undisclosed claim.

DiVittorio v. HSBC Bank, USA (In re DiVittorio), 430 B.R. 26, 47 (Bankr. D. Mass. 2010)

(footnotes omitted) (citing, *inter alia*, Payless Wholesale Distribs., Inc. v. Alberto Culver,

Inc., 989 F.2d 570,  571 (1st Cir. 1993), and Sullivan v. Decision One Mortgage (In re

Sullivan), 346 B.R. 4, 31-32 (Bankr. D. Mass. 2006)).  The Debtors did not address, let alone

explain, their failure to disclose their pending action against Wells Fargo in their First

16

Bankruptcy Case.  They did not proffer inadvertence or lack of knowledge of the claim as a reason for its omission from Schedule B and their Statement of Financial Affairs.  The Debtors cannot assert a lack of knowledge of the claim because they had commenced their action against Wells Fargo before they filed their First Bankruptcy Case.

6) For the foregoing reasons, the Motion for Preliminary Injunction is denied.

7) Because the Debtors have no interest in the property and have failed to establish entitlement to injunctive relief, the Court concludes that Wells Fargo has presented a colorable claim to the Property, and the  Motion for Relief from Stay is allowed. *See* Grella v. Salem Five Cent Sav. Bank, 42 F.3d 26, 32 (1st Cir. 1994).

By the Court,

Joan N. Feeney
United States Bankruptcy Judge

February 25, 2011

17